IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANTHONY L. HANSON, :
:
    Plaintiff, :
:
vs. :
: CIVIL ACTION 13-0443-M
CAROLYN W. COLVIN, :
Social Security Commissioner, :
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and enter judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 23). Oral argument was waived in this action (Doc. 22). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative action not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Hanson was fifty years old, had completed a high school education (Tr. 52), and had previous work experience as a delivery truck driver, concrete truck driver, and an automobile parts clerk (Tr. 74). Plaintiff alleges disability due to a history of deep vein thrombosis (hereinafter *DVT*) and degenerative changes of the right knee (Doc. 12 Fact Sheet).

Hanson filed a protective application for disability benefits on April 28, 2010 (Tr. 167-70; *see also* Tr. 23). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his past relevant work, there were specific light work jobs that Plaintiff could perform (Tr. 23-31). Hanson requested review of the hearing decision (Tr. 18-19) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence. Specifically, Hanson alleges that: (1) The ALJ did not properly consider the opinions of the treating physicians; (2) the ALJ did not properly consider his complaints of pain and limitation; (3) the ALJ's residual functional capacity (hereinafter *RFC*) determination is unsupported by the evidence; and (4) the ALJ did not pose a proper hypothetical to the Vocational Expert (hereinafter *VE*) (Doc. 12). Defendant has responded to—and denies—these claims (Doc. 18). The relevant evidence of record follows.

On December 23, 2008, Dr. C. H. Wilson, IV, an Orthopaedic Surgeon, examined Hanson for recurring right knee pain; the doctor noted that Plaintiff was in no acute distress and had right knee range of motion (hereinafter *ROM*) from 0 to 85 degrees (Tr. 292-93, 350; *see generally* Tr. 288-95). Hanson had diffuse pain and mild to moderate effusion with no warmth or redness associated with the knee joint; x-rays revealed no acute abnormality. Plaintiff was recommended for physical therapy with restrictions from stooping, climbing, or prolonged standing. On February 20, 2009, the Orthopaedist noted that Hanson had made good progress, having full ROM in his knee with no effusion and minimal pain; his diagnosis was right knee degenerative changes (Tr. 290). Plaintiff was encouraged to continue his knee exercises and conditioning. On April 28, 2010, Wilson noted that ROM was 0 to 130 degrees with mild pain;

3

Hanson was told to use ice on his knee (Tr. 291). On May 28, 2010, Dr. Wilson's notes indicate that Plaintiff's pain had resolved and that he had only minimal tenderness (Tr. 289).

On September 1, 2010, Dr. William Gewin, an Internist specializing in pulmonary disease, reported that Hanson had pain and swelling in his right leg, similar to previous episodes of DVT (Tr. 296-99, 349). The Doctor noted swelling, in spite of his use of a compression stocking, but indicated that Plaintiff was in no acute distress. Venous Doppler studies showed right leg compression that appeared chronic.

Records from Dr. Glenn Esses, a Vascular Surgeon, on September 2, 2010, reveal his examination of Hanson for right leg heaviness, pain, and swelling (Tr. 313-17, 348). Plaintiff was unable to wear his compression stocking because of his symptoms. The Doctor noted that he had been treating Hanson for about ten years for DVT. Hanson was admitted to Mobile Infirmary Medical Center for five nights for recurrent pain in the right thigh and lateral thigh region (Tr. 300-12). Though there was no evidence of DVT, there was evidence of chronic debris noted throughout the right lower extremity; there was also evidence of severe venous reflux throughout the deep veins in the extremity (Tr. 309).

On November 4, 2010, Orthopaedic Wilson noted that Hanson's pain was confined to the medial joint line of the right knee;

4

ROM was 0 to 130 degrees (Tr. 318-19). Plaintiff was given a steroid injection.

Emergency Room records from Mobile Infirmary demonstrate that Hanson was seen on December 3, 2010, complaining of neck pain and right upper extremity tingling following a motor vehicle collision (Tr. 337-47). He was in no distress and was non-tender over the cervical spine and neck muscles; Hanson had full ROM in both upper extremities. There was no tenderness to palpation of any joints or muscle group. Plaintiff was given some nonsteroidal pain meds and muscle relaxants.

On February 4, 2011, Hanson returned to the Emergency Room with complaints of intermittent sharp chest pain with shortness of breath (Tr. 322-36). Chest x-rays revealed no active pathology; an EKG was normal. He was admitted to the hospital for four nights (Tr. 371-95). A CT scan showed no pulmonary embolus. Hanson was told to stop smoking (Tr. 385). Plaintiff was discharged in improved, but stable, condition with a guarded prognosis; the discharge diagnosis was atypical chest pain.

On December 29, 2010, Dr. Gewin completed a clinical assessment of pain indicating that Hanson's pain distracted him from adequately performing work (Tr. 320). Gewin was unable to assess how pain medications affected Hanson's performance.

On January 7, 2011, Dr. Esses completed a physical capacities evaluation indicating that Hanson was capable of

5

sitting, standing, or walking for one hour each at a time and during an eight-hour day (Tr. 321). Hanson was capable of lifting and carrying up to five pounds frequently and twenty-five pounds occasionally; he would have no trouble using his hands for simple grasping, pushing and pulling of arm controls, and fine manipulation. Hanson was not able to use either leg for pushing and pulling of leg controls. Esses further indicated that Plaintiff could occasionally bend, squat, crawl, and reach, but could never climb. On that same date, the Doctor completed a pain form in which he indicated that Hanson's pain distracted him from adequately performing work and that medication side effects could be expected to be severe and limit his effectiveness because of distraction, inattention, and drowsiness (Tr. 396).

On May 10, 2011, Plaintiff was admitted to Mobile Infirmary for one night, through the Emergency Room, following three-to-five days of swelling and pain in his right lower leg (Tr. 351-70). The pain was mild, similar to past episodes, and exacerbated by activity. Hanson was noted to have normal ROM, though there was moderate edema of the right lower extremity with calf tenderness. Venous Dopplers of the lower legs showed no DVT on either side, though there was chronic debris noted throughout the right lower extremity (Tr. 356, 370).

On December 18, 2011, Plaintiff returned to the Mobile

Infirmary Emergency Room for pain in the right ankle and thigh for the previous three-to-five days (Tr. 407-32). The pain was moderate, similar to prior episodes, and aggravated by movement; symptoms included loss of sensation and tingling. Hanson had normal ROM, though there was right leg swelling with truncated nodules in the ankle area. There was no evidence of DVT. Plaintiff was discharged in stable, good condition.

At the first evidentiary hearing, on October 24, 2011, Hanson testified that he had worked though November 15, 2009 when he was laid off because there was no work for him (Tr. 50-72). He stated that he saw Dr. Gewin only rarely and Dr. Esses only when he was having trouble with his leg, the last time being September 2010; he had last seen his Orthopaedic in December 2010 (Tr. 58). Plaintiff said that his right knee pops, hurting every day; he elevates the leg above his heart. If the pain gets too bad, he takes Lortab.[1] He has sharp pain in his thigh most of the time that Hanson rated as seven on a ten-point scale; elevating the leg drops the pain level to four or five. He has to sit for about half-a-day with his leg elevated. He can walk no more than fifteen minutes without his knee or legs bothering him; he can stand no longer than an hour. Plaintiff can sit for only an hour. Hanson testified that he

---

[1] **Error! Main Document Only.** *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

7

cleans a little around the house; he does some cooking and laundry, but nothing outside.  Plaintiff can and does drive.

At the second evidentiary hearing, on April 18, 2012, Plaintiff testified that he had been to the hospital a week earlier for swelling and pain in his right leg (Tr. 40-44).  Hanson stated that his leg has steadily gotten worse since 2001, swelling up so bad that he cannot walk, sit, or drive.  For relief, he props his leg up higher than his heart, sometimes four-to-five hours at a time.  In between those periods, he washes clothes or dishes if necessary.  Plaintiff testified that on the day he went to the hospital, he had severe pain and swelling and that this was not normal (Tr. 42).  This concludes the review of the relevant evidence.

In bringing this action, Hanson has asserted that the ALJ did not properly consider the opinions of the treating physicians.  Plaintiff specifically references Drs. Esses and Gewin (Doc. 12, pp. 21-22).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. §

---

[2]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent

8

404.1527 (2013).

In her determination, the ALJ rejected Internist Gewin's conclusions regarding Hanson's pain as unsupported by his examination notes, inconsistent with the record as a whole, and contradicted by Plaintiff's own testimony (Tr. 27-28). The Court further notes that Gewin examined Hanson only once in the two years' worth of medical records post-dating the asserted disability date of November 15, 2009. While the fact that there was only a single exam would not invalidate his conclusions, the lack of medical evidence to support them does.

The ALJ gave great weight to Dr. Esses' conclusion that Hanson was able to sit, stand, and walk, each, for an hour at a time while giving little weight to his conclusion that an hour each for those activities during an eight-hour period was all that he could do (Tr. 28). The ALJ found these latter conclusions unsupported by the Doctor's medical records, the record as a whole, and Hanson's work history and testimony. The Court notes that Dr. Esses, like Dr. Gewin, apparently examined Plaintiff only once during the two years following his onset date, though he did admit him to the hospital following that visit. Nevertheless, Esses' conclusions do not have medical support in his own notes or in this record. The Court finds

---

decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

substantial support for the ALJ's rejection of Drs. Esses' and Gewin's conclusions regarding Plaintiff's pain and limitation.

Hanson next claims that the ALJ did not properly consider his pain (Doc. 12, pp. 21-28). The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are

> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

In her determination, the ALJ found that although Hanson's impairments caused him pain, his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible" (Tr. 27). The ALJ went on to note that the medical records did not support his claims of debilitating pain as doctors noted that his pain, swelling, and edema were mild at worst and that he retained full range of motion in his right leg (Tr. 27). The ALJ noted that the treatment was conservative, relying on ice packs, leg elevation, physical therapy at home, medication, and the use of compression stockings (Tr. 27). The ALJ also noted that Hanson only rarely required medical treatment (Tr. 27).[3] Furthermore, the ALJ noted that, by his own

---

[3] The Court notes that Plaintiff makes much of the ALJ's finding that he only rarely sought medical care, pointing out four specific Emergency Room treatments (Doc. 12, p. 24). The Court finds the argument without merit, noting that one visit followed a motor vehicle collision (Tr. 337-47), one was for chest pains (Tr. 322-26, 371-95), while the third was for problems associated with his right leg (Tr. 351-70), and the fourth was, again, for problems associated with his

testimony, Plaintiff indicated that he was not laid off from his jobs for medical reasons and that he sought unemployment payments for a period he now claims to have been disabled though he sought work when those benefits ceased (Tr. 27-28). Finally, the ALJ noted that Hanson's testimony regarding his most recent Emergency Room visit was inconsistent as he first reported the pain and swelling to be abnormal, though later characterizing them as an everyday occurrence (Tr. 28). The Court would further note that Plaintiff testified that his pain does not require him to take pain medication though it has been prescribed for him. The Court finds that the ALJ has provided many reasons, supported by substantial evidence, for rejecting Plaintiff's assertions of pain. Hanson's claim otherwise is without merit.

Hanson next claims that the ALJ's RFC determination is unsupported by the evidence (Doc. 12, pp. 3-21). The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes

---

leg, for which no records exist. While the first two hospital visits are not to be ignored, they do not form the basis of Hanson's disability claim and only seek to emphasize the ALJ's finding that Plaintiff only rarely sought treatment for his purported disabling impairments. More specifically, the Court notes that there are no treatment records from Hanson's physicians after the examination by Orthopaedic Wilson on November 4, 2010, nineteen months before the ALJ's determination.

that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 404.1545(a)(3).

In her determination, the ALJ found that Hanson had the RFC to perform light work[4]

> except the claimant is limited to work which will only require the claimant to: occasionally lift/carry 25 pounds; frequently lift/carry 10 pounds; sit 1 hour at a time and 6 hours during an 8-hour workday; stand/walk 1 hour at a time and 6 hours during an 8-hour workday; never operate foot controls with the right leg; never climb ladders/scaffolds/ropes; never kneel, crouch or crawl; never work around unprotected heights or dangerous equipment; and occasionally climb ramps/stairs.

(Tr. 26).

The Court notes that, for the most part, this RFC is similar to the physical capacities evaluation completed by Hanson's treating doctor (Tr. 321) though there are some differences. The Court will focus, however, on Hanson's

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b)(2013).

13

assertion that Dr. Esses found him able to bend and reach only occasionally, a finding the ALJ accepted but did not include in his findings (Doc. 12, p. 10). The Court acknowledges the ALJ's acceptance of these conclusions as shown by her giving "great weight" to that portion of Esses' opinion (Tr. 28).

The Court finds this particularly relevant in light of Plaintiff's claim that the ALJ did not pose a proper hypothetical to the VE (Doc. 12, p. 10-11; *cf.* Tr. 75-76). The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). More recently, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1181 (11th cir. 2011), the Eleventh Circuit Court of Appeals held that, after determining that a claimant had a moderate limitation in maintaining concentration, persistence, or pace, an ALJ had to either determine that the limitation would not affect the claimant's ability to work or include that limitation as part of the hypothetical question to the VE. Although Hanson does not have a moderate limitation in maintaining concentration, persistence, or pace, the Court finds that the reasoning of *Winschel* is instructive here.

14

The ALJ, in examining the VE, presented a hypothetical question encompassing the components of what would become her finding of Hanson's RFC (Tr. 75). The VE responded that although he could not perform his past previous work, there were two light work jobs[5] that Hanson would be capable of performing (Tr. 75-76). In her determination, the ALJ summarized the VE's testimony and then relied on it to find that Plaintiff was not disabled (Tr. 30).

The problem arises in that the ALJ failed to include in the hypothetical question Dr. Esses' conclusion that Plaintiff was able to reach and bend only occasionally; likewise, the ALJ did not state that those limitations would not affect Hanson's ability to work as required in *Winschel*. The two jobs that the VE said that Plaintiff was capable of performing, based on the hypothetical, were courier and school bus monitor (Tr. 30, 76). The Court has reviewed the descriptions of those jobs, in the Dictionary of Occupational Titles, and found the description for courier to be as follows:

> Delivers messages, telegrams, documents, packages, and other items to business establishments and private homes, traveling on foot or by bicycle, motorcycle, automobile, or public conveyance. May keep

---

[5]Plaintiff has posed an objection to a third job found by the VE and the ALJ that Hanson could perform and though that objection may be correct (Doc. 12, p. 20), the Court declines to address the argument in light of the Court's other findings.

15

> log of items received and delivered. May
> obtain receipts or payment for articles
> delivered. May service vehicle driven, such
> as checking fluid levels and replenishing
> fuel. May be designated according to item
> delivered, as Telegram Messenger (tel. &
> tel.).

*See* http://www.occupationalinfo.org/23/230663010.html.[6] The description for the second position, school bus monitor, is as follows:

> Monitors conduct of students on school
> bus to maintain discipline and safety:
> Directs loading of students on bus to
> prevent congestion and unsafe conditions.
> Rides school bus to prevent altercations
> between students and damage to bus.
> Participates in school bus safety drills.
> May disembark from school bus at railroad
> crossings and clear bus across tracks.

*See* http://www.occupationalinfo.org/37/372667042.html.

The Court notes that it is not its responsibility to fill in the blanks when the ALJ leaves gaps in the determination. However, a cursory review of the Dictionary may have led to the conclusion that the ALJ's failure to include Plaintiff's limitation in bending and reaching in the RFC and the hypothetical question to have been, at most, harmless error. However, the Court cannot reach that decision. The Court cannot

---

[6]This description is based on Listing 230.663-010 in the Dictionary of Occupational Titles. Though the VE and the ALJ cited Listing 237.667-010, the Court found no such listing.

16

say that the ALJ's determination that Hanson is capable of performing the jobs of courier and school bus monitor is supported by substantial evidence.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding what work Plaintiff can perform. Judgment will be entered by separate Order.

DONE this 23rd day of June, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
